UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUZANNE BRANCIFORTE,<br><br>Petitioner,<br><br>v.<br><br>ADRIAN HERNANDEZ,<br><br>Respondent. | Civ. No.: 04-10640-RGS |

**PETITIONER SUZANNE BRANCIFORTE'S MEMORANDUM
IN SUPPORT OF MOTION FOR (1) REASONABLE ACCESS TO HER SON,
(2) JUDICIAL IMMUNITY FROM PROCESS WHILE PRESENT FOR SUCH
VISITATIONS AND TO LITIGATE THIS MATTER, AND
(3) A STAY OF STATE COURT PROCEEDINGS**

Petitioner Suzanne Branciforte ("Suzanne") of Italy hereby respectfully submits this memorandum in support of her motion for an Order, under the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), granting her (1) immediate reasonable access to her son, Maximillian ("Max"), who now resides in the Commonwealth of Massachusetts, (2) judicial immunity from service of process on her by Respondent Adrian Hernandez ("Adrian") and/or his agents while she is present in the Commonwealth for such visitations and/or to litigate this matter, and (3) a stay of state court custody proceedings between the parties in *Hernandez v. Branciforte*, 95DR-2156-DV1 (Mass. Super. Ct., Worcester County Probate & Family Court Department) ("Worcester Probate Court"). In further support of this motion, Suzanne relies on her Verified Amended Petition (the "Petition").

**Background**

Suzanne has not been permitted to exercise parental rights as to Max for approximately 5 years. He is now 10 years old. Prior to their divorce, Suzanne and Adrian agreed in a formal

Stipulation that she could take Max to live with her in Italy. *See* Petition ¶¶ 7-11; *see also Branciforte v. Hernandez*, 55 Mass. App. Ct. 212, 213 (2002). As part of the divorce, Suzanne obtained Adrian's consent to Max remaining with her in Italy, and the parties agreed to a visitation schedule for Adrian through August 31, 1998. *See Branciforte*, 55 Mass. App. Ct. at 213. The divorce decree awarded physical custody to Suzanne, with the parties sharing joint legal custody. *See id.* The Stipulation did not place any limitation on Suzanne's right to remain in Italy indefinitely with Max. Pursuant to the Stipulation, Suzanne and Adrian agreed to negotiate further visitation for Adrian in good faith after August 1998. *See* Petition ¶ 9.

In or about July 1998, a dispute arose regarding prospective custody rights. Adrian advanced claims for a shift of physical custody in Worcester Probate Court and shortly thereafter submitted claims under the Hague Convention to a family court in Italy. *See id.* Initially, the family court in Italy granted Adrian's Hague Convention claims based largely on a temporary order he had obtained in Massachusetts. *See* Petition, Exh. A (describing procedural history in Italy). Subsequently, the Supreme Court of Italy reversed that decision. *See id.* Unfortunately, in the interim, Adrian had brought Max back to the United States, contrary to the ultimate determination by the Supreme Court of Italy regarding the parties' rights under the Hague Convention. On remand, the family court in Italy dismissed Adrian's Hague Convention claims in a decision reflecting that Max's habitual residence had become Italy. *Id.* Adrian ignored these rulings, even though he had submitted to the jurisdiction of Italy for the determination of Hague Convention issues.

Rather than honor the decision of the Supreme Court of Italy and the family court there on remand, Adrian aggressively pursued contempt claims and the like against Suzanne in Massachusetts. The Massachusetts probate court held against Suzanne her efforts to preserve her

rights in Italy and under the Hague Convention. *See Hernandez*, 55 Mass. App. Ct. at 215-17. The Massachusetts courts expressly noted that they were not addressing Hague Convention issues. *Id.* at 215 n. 1.

Adrian and his counsel have conducted nothing shy of a vendetta against Suzanne. *See* Petition ¶¶ 27-32. Threats by Adrian and his counsel of criminal penalties and the like have prevented Suzanne from comfortably securing access to Max in Massachusetts. *See id.* While Suzanne enjoyed substantial telephonic contact with Max until recently, even that has now been terminated, to the extreme detriment of both mother and son. Petition ¶¶ 1, 32.

On April 9, 2004, the United States Department of State directed a letter to the Worcester Probate Court informing it of the request by the Central Authority of Italy for the return of Max and the obligation under the Hague Convention for the Worcester Probate Court to refrain from further custody-related proceedings. *See* Motion, Exh. A. In this action, Suzanne seeks to enforce the final rulings of the Italian courts, to obtain the return of Max to her in Italy, to have the custody and related orders by the Massachusetts courts vacated, and to obtain reasonable access to Max in the interim. By way of the present motion, Suzanne seeks reasonable and immediate visitation with immunity from service of process while present for such access and for participating in the litigation of this matter, and a stay of any further state court custody proceedings until the resolution of the present action. Suzanne is willing to deposit her passport with this Court during the pertinent time periods in which she visits with Max.

## Argument

I. **Under the Hague Convention, Suzanne is Entitled to Immediate Reasonable Access to Max, Along with Judicial Immunity from Process to Protect Against Adverse Consequences of Her Visitations with Max and Litigation of this Matter.**

Article 1 of the Hague Convention provides that the objectives of the Hague Convention include not only ensuring the return of children to a former place of habitual residence, but also honoring that rights "of access under the law of one Contracting State are effectively respected in the other Contracting States." The International Child Abduction Remedies Act implements the Hague Convention, and provides this Court with jurisdiction to grant provisional remedies during the pendency of this proceeding in the interests of the "well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." 42 U.S.C. § 11604(b).

Petitioner's parental rights to Max, within the meaning of the Hague Convention, are reflected in the decisions of courts in Italy and the request by the Central Authority of Italy for the return of Max. *See* Motion, Exh. A; Petition, Exh. A. The family court in Italy found that "there was no basis for the child to be returned to his father" and that the content of telephone calls with Max reflects that the separation of him from his mother "causes deep grief to the child, whose rights to maintain significant relations with his mother deserve primary consideration." Petition, Exh. A at 1-2. Under such circumstances, Petitioner's rights of access should be enforced in this proceeding.

Even in the event that this Court somehow ultimately reaches a different conclusion than did the Supreme Court of Italy and the subsequent family court decision in Italy finding that Max should not have been returned to the United States, Suzanne remains entitled to enforcement of her rights of access under the Hague Convention. The Second Circuit explained in *Croll v.*

*Croll*, 229 F.3d 133, 143-44 (2d Cir. 2000), that foreign court orders that legally confer only access, as opposed to custody, rights upon a left-behind parent, still trigger the provision under the Hague Convention that "affords [left-behind parents] several remedies for trespass on those rights" of access, even when a return of the child to the foreign country appears unauthorized. *Id.* at 143-44. Reasonable visitation is the epitome of such access rights. Because there has been a ruling under the Hague Convention by the Supreme Court of Italy and family court in Italy in Suzanne's favor, her right to at least immediate and reasonable access to her son Max appears indisputable.

Suzanne properly sought relief in courts in Italy after living there with Max for more than six months with Adrian's consent. Indeed, in *Toren v. Toren*, 191 F.3d 23 (1st Cir. 1999), the First Circuit upheld a mother's right to seek modification of visitation schedules in the country to which she had moved pursuant to an agreement between the parties that provided the father with only visitation rights. *Id.* at 28 (holding that mother who relocated with child from Israel to United States pursuant to an agreement between the parents, which "provide[d] that the children will live with their mother in Massachusetts for a period of years," could maintain action in Massachusetts probate court). Like the mother who relocated her child from Israel to the United States in *Toren*, Suzanne relocated Max to Italy pursuant to an agreement between the parties. *See* Petition ¶¶ 7-11.

### A. State Court Custody Determinations Have No Preclusive Effect on this Action.

Adrian was not entitled to circumvent the decision by the Supreme Court of Italy, or Suzanne's Hague Convention rights, by continuing to litigate custody matters against Suzanne in a Massachusetts probate court. Because the Hague Convention authorizes this Court to invalidate state court custody proceedings that contravene the Hague Convention, previous

rulings in Massachusetts probate court have no preclusive effect in the present proceeding. *See, e.g.*, Hague Convention, art. 16 ("the judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention"); *Blondin v. Dubois*, 189 F.3d 240, 245 n.2 (2nd Cir. 1999); *Holder v. Holder*, 305 F.3d 854 (9th Cir. 2002); *Mozes v. Mozes*, 239 F.3d 1067 (9th Cir. 2001).

This Court possesses the authority and the obligation to invalidate state court rulings in prior custody proceedings that contravened the Hague Convention. As the *Holder* court has explained:

> It would also undermine the very scheme created by the Hague Convention and ICARA to hold that a Hague Convention claim is barred by a state court *custody* determination, simply because a petitioner did not raise his *Hague Convention* claim in the initial custody proceeding. The Hague Convention provides that children are not automatically removed from its protections by virtue of a judicial decision awarding custody to the alleged abductor. *E.g.*, Hague Convention, art. 17, 19 L.L.N. at 1503. Indeed, the typical Hague Convention case involves at least the potential for two competing custody orders, one in the children's "habitual residence," and one in the country to which the children have been taken. To hold that a left-behind parent is barred, in such a case, from raising a Hague Convention claim in a subsequent federal proceeding just because he or she did not raise it in the state custody proceeding would render the Convention an incompetent remedy for the very problem that it was ratified to address.
>
> Such a holding would also contravene our holding in *Mozes*. In *Mozes* we held that the *Rooker-Feldman* doctrine would not bar a federal district court adjudicating a Hague Convention proceeding from vacating a state court's custody order or its order enjoining removal of the child from its jurisdiction: "Congress has expressly granted the federal courts jurisdiction to vindicate rights arising under the Convention. ***Thus, federal courts must have the power to vacate state custody determinations and other state court orders that contravene the treaty.***" 239 F.3d at 1085 n. 55 (citation omitted). It clearly follows that, if a prior state court custody order cannot bar a federal court from vacating the state

6

>court order, then it cannot bar federal adjudication of the Hague
>Convention claim.

*Holder*, 305 F.3d at 865 (emphasis added). Accordingly, this Court is in no way bound by any decisions of the Massachusetts probate court, which erroneously penalized Suzanne for her persistent efforts to preserve her rights under the Hague Convention and the laws of Italy.

### B.     Suzanne is Entitled to Judicial Immunity While in the United States.

It is also well within this Court's discretion to provide judicial immunity for Suzanne from service of process while she is present in Massachusetts to visit Max or to litigate this matter. The Supreme Court has long held that parties who enter a forum to participate in litigation should enjoy immunity from service of process. *See Lamb v. Schmitt*, 285 U.S. 222, 225 (1932). "[T]he due administration of justice requires that a court shall not permit interference with the progress of a cause pending before it, by the service of process in other suits, which would prevent, or the fear of which might tend to discourage, the voluntary attendance of those whose presence is necessary or convenient to the judicial administration in the pending litigation." *Id.; see Matter of Equitable Plan Co.*, 277 F.3d 319, 320 (2d Cir. 1960) ("The rule giving certain witnesses, parties and attorneys in civil cases immunity from civil process during the period necessarily required for their appearance has deep roots in history."). In addition, such immunity from process will advance the cause of reuniting mother and son to protect Max's well-being, a provisional remedy well within this Court's discretion to provide under ICARA, 42 U.S.C. § 11604(b).

In Hague Convention actions, courts have recognized the need for immunity-type protections to carry out the purposes of the international treaty. *See Mendez-Lynch v. Mendez-Lynch*, 220 F. Supp. 2d 1347, 1366 (S.D. Fla. 2002) (requiring party to "dismiss any pending criminal proceedings" against other parent "relating in any way to the removal or retention of the

7

children" and to "take no steps to pursue or re-initiate such charges"). Furthermore, when permitting even a fugitive to proceed with Hague Convention claims from a foreign country while he avoided a criminal prosecution in the United States, the First Circuit has explained: "Parenthood is one of the greatest joys and privileges of life, and, under the Constitution, parents have a fundamental interest in their relationships with their children" and "[t]o bar a parent who has lost a child from even arguing that the child was wrongfully removed to another country is too harsh." *Walsh v. Walsh*, 221 F.3d 204, 216 (1st Cir. 2001).

In her present motion, Suzanne seeks only to obtain immediate and reasonable access to her son Max in Massachusetts. Such relief is not only required under the Hague Convention and as a matter of international comity, but is also the humane interim remedy for both Suzanne and her son Max. Here, Suzanne's fear of adverse consequences in a different matter, the Massachusetts probate case, as well as other potential actions that Adrian and his counsel have threatened against her, entitle her to immunity from process while present in Massachusetts for visitation with Max and for participating in this litigation.

**II.  Under the Hague Convention, this Court Should Stay Further State Court Custody-Related Proceedings Between the Parties Related to Max.**

The United States Department of State has directed a letter to the Worcester Probate Court informing it that the Central Authority of Italy has submitted an application under the Hague Convention for the return of Max to Italy. *See* Motion, Exh. A. The letter expressly refers to Article 16, which requires the resolution of issues under the Hague Convention before any further custody-related proceedings. Nevertheless, upon information and belief, Adrian's counsel is attempting to schedule, or has scheduled, a hearing in the Worcester Probate Court matter on June 11, 2004.

Recognizing that Hague Convention issues must be resolved promptly and before the

effective resolution of custody matters, federal courts have unanimously found it inappropriate to abstain in favor of state court proceedings when a Hague Convention petitioner has insisted on a federal forum for his or her claims under international law. *See, e.g., Hazbun Escaf v. Rodriguez*, 191 F. Supp. 2d 685, 693 & fn. 31-34 (E.D. Va. 2002) (relying on Second Circuit and Eighth Circuit cases finding abstention inappropriate in Hague Convention actions because "[d]eference to a state court's interest in a custody dispute is especially problematic in the context of a Hague Convention claim because ICARA and the Convention explicitly 'divest [ ] the state of jurisdiction over ... custody issues until the merits of the Hague Convention claim have been resolved.'"), *aff'd*, 52 Fed. Appx. 207 (4th Cir. 2002); *see also, infra*, Point I.A.

    Accordingly, consistent with the Hague Convention and ICARA, this Court should issue a stay of further proceedings in the Worcester Probate Court until the resolution of Petitioner's Hague Convention claims.

## Conclusion

Based on the foregoing, Petitioner respectfully requests that this Court grant her immediate and reasonable access to her son Max and judicial immunity from process while present in this jurisdiction for such visitations and the litigation of this matter. In addition, Petitioner requests a stay of further state-court custody related proceedings in *Hernandez v. Branciforte*, 95DR-2156-DV1 (Mass. Super. Ct., Worcester County Probate & Family Court Department).

Respectfully submitted,

By: _____
Barry S. Pollack (BBO#642064)
DONNELLY, CONROY & GELHAAR, LLP
One Beacon Street
Boston, MA 02108
(617) 720-2880
Attorneys for Petitioner Suzanne Branciforte

Dated: May 20, 2004

### CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand

Date: 5/20/04 _____

10