**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

FILED
CLERKS OFFICE

2004 JUL 12 P 3: 42

U.S. DISTRICT COURT
DISTRICT OF MASS

**SUZANNE BRANCIFORTE**[1]

v.                                                           C.A.#04-10640NMG

**ADRIAN HERNANDEZ**[2]

**FATHER'S RESPONSIVE PLEADING TO
MOTHER'S 'VERIFIED' PETITION**

**FIRST DEFENSE BY MEANS OF A MOTION TO DISMISS**

I.  Pursuant to Fed. R. Civ. P. 12(b)(6), to the extent that the 'Petition' sets forth 'facts', Mother fails to state a claim for which relief can be granted in that:

   A.  This action is barred, as a matter of law, by the Doctrine of <u>Res Judicata</u>, and/or by all forms of issue preclusion, whether under Massachusetts common law or Federal common law, or both.

   B.  The issue of "custody" of the minor child, was <u>fully litigated</u> in each of two adversary proceedings commenced by both of the parties in the Worcester Division of the Probate & Family Court Department of the Trial Court of the Commonwealth of Massachusetts, Docket # 95 DR

---

[1] Hereafter referred to as "Mother."

[2] Hereafter refered to as "Father".

2156-DV1.[3]

1. In the course of that State action, commenced in 1995, mother fraudulently, secretly and wrongfully removed the parties' only minor child, Maximilian, from Massachusetts to Italy without first obtaining father's consent and without first obtaining a Judgment permitting the removal of the minor child as required by the provisions of Massachusetts statutory law as set forth in G.L.c.208, §30.[4]

2. On or about July, 1998, father commenced actions for Modification to bring back the child, for custody and child support and for contempt to sanction mother for the wrongful taking and the wrongful retention of their son and for not having complied with the Judgment of Divorce. All of these actions were duly served upon mother, in person, while she was in the City of Boston, Massachusetts where she had come for a holiday, bringing the child to see his dad.

3. Thereafter, mother joined issue in the State Court proceeding

---

[3] Hereafter referred to as the State Trial or State Case.

[4] " "

and also filed in the State Court, a Petition for Removal of the Minor child to Italy and within days, filed an Amended Petition for Removal of the Child, which did not raise any Hague Issue.

4. On or about October 2, 1998, while father had joint legal custody of the child, and ***prior to the commencement of any proceedings by mother in Italy***, Father was awarded full Custody of the minor child, a decision which mother promptly and immediately appealed, but which was summarily rejected by the Appeals Court.

5. When mother realized she had lost her attempt to appeal the award of Custody to the father, she secretly went forum shopping into a court in Genoa Italy where she lied and fabricated the events of the summer of 1998 in order to get an Order that the child need not be returned to America. In that suit, mother falsely claimed that father had kidnapped the child, and that he had wrongfully retained the child and that the only by the efforts of the police was the child found and returned to her. The entire story was a pack of lies without a shred of truth. Mother did not expect that father would fight her in Italy. But he

did. Father interceded in that suit and issue was joined there as well, this time Father raising the Hague Convention issues through his attorney in Italy and an attorney from the United States, Patricia Apy, of New Jersey, one of the world's most experienced and acknowledged experts in Hague Convention law. The Genoa Court reviewed the contested issues presented by both parties and all of their attorneys.

6. On or about **_February 1, 1999_**, during the pendency of the Massachusetts case, the Genoa Court Ordered that the child be returned to his father **under the Hague convention**. Mother requested a one month extension to remain with her son, which was voluntarily given by father who, on or about April 2, 1999, flew to Italy, and came home with Maximilian to their home in Boston, MA.

7. The Massachusetts trial, not conducted day-to-day, was commenced on October 26, 1998 and was nevertheless a full, fair, lengthy, contested, seven [7] day trial _in which mother fully participated from Italy_, directing her attorney to call witnesses, directing which witnesses to call, directing counsel to file

various procedural motions including a motion to withdraw in the midst of the trial, and other procedural ploys which the appeals court referred to as *"a prodigious defense,"* despite the fact that Mother refused to actually return to Massachusetts and refused to bring the child back, as she had promised to do and as she had been ordered to do by a spate of judges in both the trial and Appeals Courts.

8. Thereafter, on or about April 27, 1999, a 16 Section, multiple Judgment was issued by the trial judge in Massachusetts, accompanied by a 29 page compilation of detailed subsidiary and general findings of fact occupying 121 separate sections and an additional 5 pages containing 23 separate conclusions of law. The final judgment was entered by the State Court, and once again the Judge awarded full custody of the child to father, ordering mother to pay child support, finding mother in contempt on multiple counts, ordering mother to pay thousands of dollars in sanctions and court costs, and ordering that she pay 50% of father's legal fees.

9. With new counsel, to whom she had paid significant sums of

money, all the while avowing impoverishment, mother claimed an appeal from that Judgment and from virtually every aspect of the trial court proceedings. Her appeal was fully briefed and argued and was denied by a unanimous panel of the Appeals Court in June 2002.

10. Then without counsel, Mother sought Further Appellate Review from the Supreme Judicial Court of Massachusetts, and that appeal was also summarily denied, thus ending all issues relating to the custody of the minor child.

11. In more than five [5] years, mother has never even once visited the child. For more than five [5] years, mother made telephoned promises to the child that she would take him back to Italy, that she would visit him in Boston, in Florida, and anywhere else she could, all of which were lies. To prevent further in jury to the child such calls were terminated several months ago, but with instructions to mother that she could resume the calls if she ceased and desisted from further conversations such as those described.

C. The minor child has become settled in his homes in Massachusetts and

in Florida [where he lived for one year, having moved with permission of the court, under the 'real advantage' test established by Massachusetts common law under G.L.c.208, §30.] The child has always been duly enrolled in school where he is doing well, has made good and close friendships, and has the love and affection of a large family and circle of adults who are teachers, doctors, lawyers and other professionals. In all respects the child is settled and should not be uprooted again by a woman who claims to be his mother and who has **_suddenly_** , after 5 years and 4 months of never seeing her son[5], has found a purported basis for claiming that she is entitled to custody or even access. The Hague convention does not permit judgment to be entered providing access to a "wronged" parent. If mother wants 'access' [her euphemism for visitation] then she must comply with Massachusetts law and the April 27, 1999 Judgment vesting Custody in father.

---

[5] The attention of the Court is drawn to an episode which occurred while the child was in Florida and alighting from a school bus. His mother rushed toward him as her mother waited stealthily behind her in bushes, and but for the alert teacher who was present, Max might well have been kidnapped by his mother for the third time. Only by the intervention of the Dade County Police Department, was mother removed from the school premises, never to be seen again.

D. This Federal action was not brought within one year of the alleged wrongful taking; indeed, it was not brought for more than 5 years from the alleged taking and ought to be dismissed, as a matter of law.

E. This action must be dismissed, as a matter of law, as there is no proof that father ever wrongfully took the child nor that he ever wrongfully retained the child, either of which is a condition precedent to her even making the claim for recovery of the child.

## SECOND DEFENSE

II. Without waiving his First Defense, father requests dismissal of this action under the doctrine of ***forum non conveniens***. In the alternative, father asks that this matter be transferred or otherwise remanded to the Worcester Division of the Probate & Family Court Department of the Massachusetts Trial Court, which Court has had and continues to have both subject matter jurisdiction over this action and in personam jurisdiction over child and the parties, which court is the most familiar with the facts and the issues raised. Following, are the reasons on which such dismissal, transfer or remand are based:

A. Massachusetts' Probate & Family Court has subject matter jurisdiction in cases involving the Hague Treaty. **Gabor Viragh V. Maria Foldes**,

415 Mass. 96, 612 N.E.2d 241 (1993).

B. Mother's filing in the Federal Court is nothing short of a blatant attempt at forum shopping, in order to avoid the one judge she believes will not give her a fair trial because Mother had told multiple lies to that judge at the bench concerning her willingness, intent, and promise to comply with the Judge's Order that the child be brought back to Massachusetts at time of trial, which mother then refused to do; and lies about her ability to post a bond to vouchsafe the return of the child which she was able to reduce from $5000,000.00 to $20,000.00 by lying about her ability to fund that amount when at the time, she is believed to have had in excess of $200,000.00 as the product of her divorce; and believed to have an income in excess of $100,000.00 annually from her various employment endeavors as a professor and translator and an income of approximately $70.000.00 annually from royalties. In addition, mother lied in the course of signing various affidavits and other verified documents filed with the State Court during the 5 year pendency of that case.

1. **_Forum non conveniens_** warrants that if there is an "adequate alternative" forum[103] and the balance of trial conveniences

(including private and public interest factors) strongly favors the alternative forum, then the matter ought to be shifted to the more convenient forum.

2. Mother cannot possibly argue that her presence in Italy makes either Federal or State Court, more or less convenient to her. On the other hand, as to father, the use of the State Court is far more convenient than the Federal Court because the State court has already heard these proceedings and uses a calendar tracking system so that the matter will be returned to Justice Susan D. Ricci who has sat on every single aspect of all prior proceedings.

3. Judicial economy.

The Massachusetts State Court and its resources are far better equipped to handle issues of custody and access than the Federal Court. The State Family Court is designed to handle custody and visitation issues through Judges who have been appointed to that Bench because of their expertise in the field of family law; and because that specialized Court is far more able to devote its resources, time and effort, its nationally well regarded Family Service Bureau and its administrative personnel to mediate and

attempt to resolve any issue raised by the parties. And failing in that endeavor, the parties would be left to litigate these well worn issues before the one Judge in the world who knows this case better and is the most familiar with it, than any other Judge anywhere in the world.

### THIRD DEFENSE

III. Without waiving the several motions set out above, answering to the merits of the "Verified Amended Petition", the Respondent [FATHER] says as follows:

1. As to the allegations in ¶ 1,

   A. Denies the characterizations set out as not being statements of fact.

   B. Denies that petitioner was victorious in any court.

   C. Denies that petitioner was ever prevented from exercising "parental rights" for 5 years or for any other period of time; ands further answering says that the sole reason that petitioner has not seen their son is that petitioner refuses to come into Massachusetts, asserting lies for reasons, such as that she would be arrested if she did so; and Further answering admits that within the past 3 months he has eliminated telephone contact between petitioner and their child

because of the harassing, inappropriate, and insidious content of the remarks made by petitioner to their child but most importantly, because of the never-ending stream of lies told by petitioner to the child, about which she had been warned over and over again, which warnings she ignored; and further, denies that their son 'enjoyed' the phone calls; further answering father says that the calls were agonizing for the child, filled with claims that he would be taken back to Italy, that his father was evil, that his father could not be believed, that his father would have mother arrested if she came to see the child, that father wanted money from mother as a condition to see the child when mother was broke and had no funds with which to travel; and that father had prevented mother from visitation and that father would never let mother see her son, all of which were complete lies, which petitioner knew to be untrue when she spoke them to the child.

D. Is without information or belief as to the identity of the Court to which Petitioner refers and thus denies that he removed Max from Italy under a defective or invalid court order, regardless of which Court or which Order petitioner refers. Further answering, father

says that on April 27, 1999, the Probate & Family Court of Massachusetts issued a Final Judgment awarding him custody of Max in a case in which mother had been duly served and in which she participated; and as to which she filed appeals to the Massachusetts Appeals Court which was denied and to the Massachusetts Supreme Court which was summarily denied. At trial and in both appeals, her claims relating to jurisdiction were denied.

  E. Denies that he or his attorney have engaged in any behavior intended to intimidate petitioner; and denies that he has ever sought financial or custodial concessions of any kind whatsoever at any time whatsoever.

2. As to the allegations in ¶ 2, denies all allegations of fact if any, well pleaded.

3. As to the allegations in ¶ 3, denies all allegations of fact if any, well pleaded. Further answering, father denies that petitioner is "entitled" to immediate access to their son and says that any contact between her and the child would be inimical to the child's best interests, until such time as petitioner can establish that she is not psychologically dangerous to the child.

4. As to the allegations in ¶ 4, denies all allegations of fact if any, well pleaded. Further answering, father is without knowledge or information sufficient to respond to the characterizations of law set forth Further answering, father denies that Italy was the place of the child's habitual residence, denies that he either initially removed or retained the child from a custodial parent and says that he is now and has always been the child's custodial parent.

5. As to the allegations in ¶ 5, denies all allegations of fact if any, well pleaded. Further answering, father says that this case does not involve a wrongful removal or a wrongful retention of a child as alleged; that only the Petitioner engaged in such behavior and that her behavior was established as fact and true by the Massachusetts Judgment of April 27, 1999, more than 13 months before the decision of an Italian Court as alleged.

6. As to the allegations in ¶ 6, admits the allegations of fact, well pleaded.

7. As to the allegations in ¶ 7, admits that a stipulation was signed and says the document speaks for itself. Further answering father says that the document became part of still another agreement and together became part of a final judgment of divorce, which documents also speaks for

themselves.

8.  As to the allegations in ¶ 8, denies all allegations of fact and says the document not only speaks for itself, but also had the force of law as child related provisions were merged into the Judgment, as a matter of law, and were always subject to any prospective order or judgment of that Court.

9.  As to the allegations in ¶ 9, denies all allegations of fact if any, well pleaded, says the Judgment speaks for itself, and further answering says that the State Court found that Petitioner never sought removal of the child to Italy at the time of the divorce and never received approval of such a move, thereby leaving Massachusetts as the child's home state and habitual residence.

10. As to the allegations in ¶ 10, denies all allegations of fact if any, well pleaded and says that the Agreement speaks for itself, but also had the force of law as a Final Judgment of the Court because child related provisions were merged into the Judgment, as a matter of law, and were always subject to any prospective order or judgment of that Court. Further, denies the allegation that Petitioner was a resident of Italy and says such a claim is neither relevant nor material to these proceedings.

11. As to the allegations in ¶ 11, denies all allegations of fact if any, well pleaded and further answering says that Petitioner was repeatedly in violation of the terms of the judgment, that she was thereafter found to be and adjudged in contempt of court and was heavily sanctioned financially for her behavior in denying to father the ability to see their child; that her appeals from those judgments were summarily dismissed by the Massachusetts Appeals Court. Further answering father says that on April 27, 1999, the Massachusetts trial court found as a fact and entered a Final Judgment which held that the child's habitual residence had never changed because of petitioner's secretly removing him from Massachusetts without the intent to return him, having never received permission from the Court pursuant to G.L.c.208, §30. Further answering that the Petitioner herself filed with the Trial Court such a removal petition on or about August 1998 and thereafter re-filed it as an "Amended Petition for Removal" which petitioner than failed and refused to prosecute and which Petition was dismissed as a matter of law on April 27,1999. Further answering, Petitioner was then engaged in the courts of two nations, playing each against the other and then choosing which court's orders she would follow and which she would refuse to comply with. And further answering, father

states that the Italian court was lied to and was never told the truth by the petitioner who had claimed that father had kidnapped the child and held him against the mother's will and that mother needed the assistance of the police to recover the child and that father had abused the child, not one single part of which was true.

12. As to the allegations in ¶ 12, denies all allegations of fact if any, well pleaded and further answering says that every statement of fact therein is untrue and that on said date petitioner was duly served with a copy of every document filed by counsel all of which gave legal notice of all future dates an d hearings, if any.

13. As to the allegations in ¶ 13, is without knowledge or information sufficient to respond to the first sentence; denies that the Massachusetts Court tried the case *in absentia*, admits that the trial court awarded both legal and physical custody to father and admits that such determinations were entirely affirmed on appeal.

14. As to the allegations in ¶ 14, denies that petitioner did not "appear" in Massachusetts and says that not only did she appear but did so physically on at least three occasions in July, August and September 1998; that she was at all times represented by counsel and sometimes by two lawyers and

was at all times participating in the trial on the merits, as alleged above. Further, that neither the trial court nor either appeals court ever "held [her] absence from proceedings against her" and says that her absence was her own decision which the trial court gave her ample time to cure, time and again. Further, the reported decision speaks for itself and the last sentence of this paragraph is misleading g as mother never raised the Hague issues in the State Court despite ample opportunity to do so, and acted in that fashion because she was also playing the same game in the Courts of Italy.

15. As to the allegations in ¶ 15, that the Official Order speaks for itself and that six [6] days earlier, the Massachusetts Family court issued a **prior** interim order awarding full legal and physical custody to father and ordering petitioner to produce the child in 48 hours, which she refused to do; and further that to obtain the order in Italy, petitioner lied to that court claiming that father had kidnapped the child and held him against the mother's will and that mother needed the assistance of the police to recover the child and that father had abused the child, not one single part of which was true. Further answering, the petitioner has mis-characterized the nature and content of the Genoa Juvenile Court Order which speaks for itself and which held that nothing would be done by way of custody until

the American Court decided the issue.

16. As to As to the allegations in ¶ 16, Admits the facts in the first sentence and denies the allegations in the second sentence. Further answering says that no order - not one single order - was ever obtained without actual notice to the petitioner's counsel, always as required by the Rules and Laws of Massachusetts.

17. As to the allegations in ¶ 17, admits he went to Italy and, **with petitioner's consent**, brought their son back to his home state of Massachusetts; that his acts were performed under the Orders issued by two courts - Massachusetts and Italy and denies that any action on his part violated any rights' of the petitioner. Further answering, father denies that bringing Max back to the United States was a wrongful removal within the meaning of the Hague Convention.

18. As to the allegations in ¶ 18, denies all allegations of fact set forth therein. Further answering, says that the Trial Judge and two appellate courts in Massachusetts have held that petitioner was not exercising legal and physical custodial 'rights' since she wrongfully removed the child in 1997.

19. As to the allegations in ¶ 19, says that petitioner completely mis-characterizes the wording and meaning of the Judgment and Findings of