UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SUZANNE BRANCIFORTE
    Petitioner

v.                                    C.A.# 04-10640-RGS

ADRIAN HERNANDEZ
    Respondent

**RESPONDENT'S MEMORANDUM
IN SUPPORT OF HIS MOTION TO DISMISS**

1. **THIS COURT LACKS JURISDICTION TO HEAR ANY CLAIM ACTUALLY DECIDED BY A STATE COURT.**

Pursuant to *F.R.C.P. 12(b)(1)*, this court lacks jurisdiction over the subject matter of this suit as the entire subject matter has been decided by a state court, following a full, contested, trial and all appeals therefrom have been resolved in favor of the father. **Hernandez v. Branciforte**, 55 Mass. App. Ct. 212, [2002], [duplicate original of the slip decision attached as Ex."A"]. **Jones v. Jones**, 297 Mass.198, 202 (1937); cf. **Fusaro v. Blakely**, 40 Mass.App.Ct. 120, 2123 (1996); **Shea v. Neponset River Marine & Sportfishering, Inc.**, 14Mass.App.Ct. 121, 129 (1982).

Irrespective of whether a court had subject matter jurisdiction, parties may not

re-litigate a claim which has been submitted to the court for decision and which has become the subject of a final judgment [whether un-appealed or appealed and affirmed].

"Under Massachusetts law, for an issue to have preclusive effect in a subsequent proceeding, four elements must be present:

> (1) the issue sought to be precluded must be the same as that involved in the prior action;
>
> (2) the issue must have been actually litigated;
>
> (3) the issue must have been determined by a valid and binding final judgment; and
>
> (4) the determination of the issue must have been essential to the judgment." Keystone Shipping Co. v. New England Power Co., 109 F.3d 46, 51 (1st Cir. 1997) (citing Grella v. Salem Five Cent Savings Bank, 42 F.3d 26, 30 (1st Cir. 1994)).

An issue may be "actually decided" where it "constituted, logically or practically, a necessary component of the decision reached in the prior litigation." Grella, 42 F.3d at 30-31; see Keystone Shipping, 109 F.3d at 51 (applying Massachusetts law)."

Regardless of Petitioner's chances of success on the merits in this Court, the

Rooker-Feldman doctrine and the full faith and credit statutes, 28 U.S.C. s. 1738, and 28 U.S.C. 1738A preclude this Court's ability to revisit this issue. Pursuant to the *Rooker-Feldman* doctrine, this court lacks jurisdiction to review the issue of custody. The *Rooker-Feldman* doctrine provides that no federal district or appellate court has jurisdiction to review state court judgments. **Sheehan v. Marr**, 207 F.3d 35, 39-40 (1st Cir. 2000); see **District of Columbia Ct. of Appeals v. Feldman**, 460 U.S. 462 (1983); **Rooker v. Fidelity Trust Co.**, 263 U.S. 413 (1923).

Even if a federal claim was not presented in state court, *Rooker-Feldman* "forecloses lower federal court jurisdiction over claims that are 'inextricably intertwined, with the claims adjudicated. **JOEL ROSENFELD V. DAVID C. EGY and ALBERT J. BAIMA**, C. A. NO. 01-10730-DPW, MEMORANDUM AND ORDER [January 29, 2003] Woodlock, J.

2.  **THIS ACTION MUST BE DISMISSED UNDER F.R.C.P.12(b)(6) AS IT IS BARRED BY *RES JUDICATA*.**

    A.  The issue of "custody" of the minor child, was fully litigated in an adversary proceeding commenced by respondent in the Worcester Division of the Probate & Family Court Department of the Trial Court of the Commonwealth of Massachusetts, Docket # 95 DR 2156-DV1.

Mass.474, 477-8 (2000); <u>**Berkowitz v. President & Fellows of Harvard College**</u>, 58 Mass. App. Ct. 262, 270 (2003).

Without converting these proceedings into one for Summary Judgment, the court may properly consider facts judicially noticed and, conversely, may disregard any allegations in the complaint which the court judicially notices as false. <u>**Jarosz v. Palmer,**</u> 49 Mass. App. Ct. 834, 835 (2000) aff'd 436 Mass. 526 (2002). For an example of judicial notice of false allegations, this court need only look at ¶ 10 of the complaint, in which mother claims to have been tried *in absentia!* A review of the *Herenandez* decision and the annexed exhibits makes that claim patently false.

In addition, mother's admissions in ¶ 11 that there had been full participation by her counsel in the entire trial, coupled with the facts set out in the Final Judgment it is abundantly clear that there had been full and fair litigation of every issue before the court and that the most significant issue of all, was that of custody of Max.

Mother's complaint must allege that the removal of Max from Italy was wrongful or that the retention was wrongful. Without one or the other, it cannot be allowed to proceed further. [And that is beside the point that the Massachusetts Court found that mother's removal without consent or court approval was itself wrongful. \*\*]

In ¶ 12 of mother's complaint she claims she had obtained a custody order on

October 8, 1998, ignoring the fact that father had obtained such an order a week earlier on October 2, 1998. **Hernandez** at 214.  In ¶14 of mother's complaint she makes the bald assertion that the child was removed from Italy under a *defective* order. Not only is that not a proper averment of fact, it is also wrong as a matter of law. **Hernandez** at 215 - 217.

> "The mother counters that in July 1998, when the father filed his modification complaint, the Italian courts were willing to the adjudicate custody issue and, in fact, later exercised jurisdiction in the matter. We reject the assertion; the Probate Court correctly concluded that the Italian Courts essentially acted to maintain the status quo, allowing the child to remain in Italy and otherwise declining jurisdiction until the Massachusetts Probate Court could issue a final decision."

Although in ¶6 and ¶7 of the complaint mother alleges the existence of a stipulation and an agreement which are said to provide the basis on which mother had the 'right' to have the child in Italy, both of those documents were *merged* into the divorce judgment as a matter of law and lost all further effect as contracts with independent significance. There was no agreement once the judgment of divorce had entered as it had been merged into the judgment. **Hernandez** at 213.

In ¶8, mother then attempts to buttress that claim with the statement that Italy was the child's 'habitual residence'. Both claims are absolutely essential and inextricably intertwined with the assertion of the Massachusetts' court's jurisdiction

just as they are with this court. However, her statements are not statements of fact; they are conclusions of law. Even if they are regarded as fact, both claims were decided by the Massachusetts' Final Judgment and both claims were found to be without merit on appeal. Hernandez v. Branciforte, 55 Mass. App. Ct. 212, 216, and see fns. [2, 3, 4] (2002). The Massachusetts Court did not have to determine "habitual residence" or "Home state" issues, because its own jurisdiction was founded in G.L.c.209B and because mother had never obtained either father's consent or approval of the court to ever remove the child from Massachusetts, either of which was required, as a matter of law. G.L.c.208, §30.

Even if under Massachusetts law the trial court could have deferred to a foreign country's custody proceedings to Italy, but chose not to do so. See cases collected at **Hernandez v. Branciforte**, at 217 fn. 3.

On October 2, 1998, father obtained an interim order granting him full custody of the minor child. Id. at 214. Mother appealed that order but her appeal failed. Only after she learned of the change of custody, did mother commence suit in Italy. Id. At 214. When neither the Italian trial court nor the Italian Supreme Court had entered any order that the child should remain with mother, the October 2, 1998 Order of the Massachusetts Court formed the basis for the legal return of the child to the United States. Thus, there could not have been a wrongful taking.

Page 7 of 16

In ¶16 of her complain, Mother alleges next that there was a wrongful retention, and claims the Supreme Court of Italy had entered a judgment on March 28, 2000, but fails to allege that the Judgment ordered a change in custody or that the Judgment did anything at all. The allegation seeks to have this court imply that the effect of the judgment required the Massachusetts court to give up the child or required father to return him. This court cannot imply its terms. Further, the meaning of a judgment is a matter of law for the court. But this court can have no idea what the Italian Supreme Court held, because mother did not affix and incorporate all the Judgments to her complaint.

Regardless of the breadth of mother's allegations, she is completely unable to prove the existence of any right to have the child in Italy after October 2, 1998. The October 8, 1998 Order of the Juvenile Court of Genoa maintained the status quo, pending resolution of the litigation in Massachusetts. Id. At 215. And see Fn.1 where the Appeals Court recounts the course of the Italian proceedings. Thereafter, in February and in April 1999, the Genoa Court ordered the child to be returned to his father. Although the Italian Supreme Court later said that the Genoa court did not properly consider the Hague Convention issues, it never entered any order that the child be returned to Italy. The Juvenile Court then dismissed father's pending Hague petition as well as mother's October 8, 1998 litigation, because both

proceedings were moot in light of the Final Judgment  Thus, the decision of <u>the Massachusetts Appeals Court, resting issues of jurisdiction upon G.L.c.209B, had no need to decide any Hague issue as it had been subsumed by the holding in the case as decided</u>.

3. **THE COMPLAINT OUGHT TO BE DISMISSED UNDER THE DOCTRINE OF FORUM NON CONVENIENS.**

This Court has the discretionary power to dismiss the action under the doctrine of forum non conveniens.  "The doctrine of forum non conveniens permits a trial court, on a discretionary basis, to dismiss a case where an alternative forum is . . . available . . . that is fair to the parties and substantially more convenient for them or the courts." Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 719 (1st Cir. 1996) (citing Howe v. Goldcorp Invs. Ltd., 946 F.2d 944, 947 (1st Cir. 1991).

While there is a strong presumption in favor of the plaintiff's forum choice and the defendant must bear the burden of proving both the availability of an adequate alternative forum and the likelihood of serious unfairness to the parties in the absence of a transfer to the alternative forum, **Mercier v. Sheraton Int'l, Inc.**, 981 F.2d 1345, 1349 (1st Cir. 1992) (citations omitted); see also **Piper Aircraft Co. v. Reyno**, 454 U.S. 235, 241 (1981), that burden is more than met in this case.

The provisions of ICARA themselves make Massachusetts and every State an

appropriate forum to try the issue which plaintiff claims to be able to raise. The very same statute which mother invokes to come into the federal system, provides the identical relief in the state system. See **Iragorri v. Int'l Elevator, Inc.**, 203 F.3d 8, 12 (1st Cir. 2000).

Yet, mother claims to need the intervention of *this* Court in order to regain custody of her son, "taken" from her more than 5 years ago. The change of custody that occurred on October 2, 1998, was directed by an Order of the Massachusetts Trial Court, which was the subject of an unsuccessful interlocutory appeal by mother, was confirmed by the Final Judgment on April 27, 1999 and was affirmed on mother's appeal by the decision of the Appeals Court on June 14, 2002.

Petitioner is now forum shopping, albeit in the wrong court, seeking the wrong relief, at the wrong time, all so as to avoid having to physically appear before the right judge, in the right court, where she is entitled to exactly the same relief as she professes to want here. Since ICARA grants jurisdiction to state courts as well as Federal there is no valid reason that petitioner can assert for requesting this court to intercede, while there is an open and active proceeding pending in Massachusetts.

Proceeding in Massachusetts' State Court is far less difficult than proceeding here in Federal Court. While some deference is given to plaintiffs' choice of forum, defendant will amply demonstrate that the balance of public and private factors more

than warrants dismissal in favor of Massachusetts. See Iragorri., 203 F.3d at 12 ("defendant must show that the compendium of factors relevant to the private and public interests implicated by the case strongly favors dismissal.").

The private interest factors include:

### (1) Relative ease of access to sources of proof;

The evidence previously given in the Massachusetts consisted of father and the Guardian ad Litem for the child. The witnesses for the mother consisted of a psychologist, Kenneth Herman, JD, PhD, the child's God mother, a Boston resident, and a proffer of her mother's testimony [a Florida resident]. If there were to be new evidence taken in this case, it is difficult to discern who that would be other than mother. While Worcester is an additional 45 minutes west of Boston, it is the City, forum sand Court chosen by mother and inserted in the divorce judgment as the most convenient forum for trial of any and all aspects of the case. Even if mother were to decide to return to the State to testify, she would have no burden greater than father, in going to the Probate courthouse in Worcester.

### (2) Availability of compulsory process.

Neither court provides an advantage over the other and no compulsory process is foreseen as even needed, except possibly to secure mother's attendance, in court where she remained voluntarily absent on 7 days of trial and nearly a dozen

different motion days.

### (3) Comparative trial costs.

The costs of trial in Worcester would be far less than they are in Federal Court, principally in the matter of judicial economy, in the private sense. Judge Susan D. Ricci, presided over virtually every aspect[1] of the Massachusetts proceedings from and after July, 1998, when father filed for modification, custody, contempt and sanctions. Judge Ricci knows this case inside and out and as no other judge would ever need to learn. Her knowledge of the case permits her to use judicial notice of the former proceedings, not as much in the legal sense as in the factual sense. In an age when lawyers clamor to have bench trials by judges who know the facts, this case presents an ideal situation for the parties.

### (4) Ability to enforce a judgment.

The Worcester Probate Court has enforced its own judgment as late as April 2004, when father obtained contempt judgments against mother and by trustee process was able to fully collect the money he then sought. One of mother's sources of income is Houghton Mifflin Company of Boston. It was the trustee and it paid

---

[1] On only 2 of 12 different occasions, did another judge conduct the motion hearing.

the judgment. Father anticipates that any additional judgment he may obtain would be similarly enforceable. Indeed, there is an existing preliminary injunction against both mother and her publisher with regard to disbursement of future royalties. Father anticipates no problem enforcing a future judgment.

and

### (5) All other practical problems that make trial of a case easy, expeditious and inexpensive.

The probate court is uniquely equipped to make determinations involving custody and the best interests of a child. Apart from actual probate work, it is essentially the largest single function of that court. The Court Appointed GAL still works in Sterling Massachusetts and is well known to the court. As of July 1, 2004, the Worcester division went to a calendaring system so that only Judge Ricci will ever sit on the trial of the case, if there is to be one. The Family Service of that Court is well respected throughout Massachusetts for its ability to mediate and monitor visitation. Counsel and mother are familiar with the Probate & Family Court System. Trials are now conducted day to day [with the exception of one day each week when the trial judge sits as a motion session on her cases.] For all of these reasons, dismissal is warranted so that a more convenient forum can be used. See Nowak, 94 F.3d at 719 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508

(1947)).

As for public factors, this Court must consider:

**(1) Practical difficulties of unnecessarily imposing upon a busy court the obligation to hear a case more fairly adjudicated elsewhere.**

The business of the Federal Court is far grander in scope than that of a Family Court, the latter dedicated to resolving the seemingly impossible issues which arise between parties to a marriage and with regard to their children. Its should be allowed to do its work. While father's counsel would not presume to claim that a more fair decision would result in State court, nor should mother's counsel be heard to claim that a less fair one would be produced. A review of the Judgement and Findings reveals how scrupulously fair Judge Ricci was to mother, emphasizing how the result reached was not to punish mother but to protect the child from mother, and her inability to separate her own issues from those of her son ands to assure to that child that he would have two parents to raise him, an opportunity which mother refused to provide.

**(2) The imposition on jurors called to hear a case that has no relation to their community.**

There being no jury issue in either court, father leaves this issue without further response.

### (3) The familiarity of this court with applicable laws.

Once again, father respectfully claims that the Family Court is a far better forum than the Federal Court for its chief mission is to preside over family disputes and to protect children from parental abuses of every kind. It is that very familiarity which brought the mother to the federal system, shopping for a new forum in which to vent her spleen under the guise of being the victimized mother, injured buy father and every single one of the 7-9 judges who ever sat on any aspect of her case in all 3 tiers of the state system.

For the foregoing reasons, father asks the Court to exercise its discretion and to balance both the public and private factors in such a way as to dismiss this action on the basis that the Family Court in Worcester, MA, is the best suited to hear and **decide this action. Cf. IN RE LERNOUT & HAUSPIE SECURITIES ITIGATION, C. A, No. 00-CV-11589-PBS (consolidated)Date: June 19, 2002 MEMORANDUM AND ORDER Saris, U.S.D.J.**

        **Respectfully Submitted,**

        ADRIAN HERNANDEZ, RESPONDENT

        By his Attorney,

*[signature]*

EDWIN C. HAMADA, Esq.

BBO # 218480

790 Boylston Street

Boston, MA 02199

July 29, 2004                             617-262-8890

> I hereby certify under oath that a true copy of
> of this pleading has been served this day upon
> each attorney of record, by pre-paid first class
> or in hand at the office of counsel of record.
>
> *[signature]*
> Edwin C. Hamada
> Attorney for plaintiff /defendant.
> DATED: 7/29/04