UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SUZANNE BRANCIFORTE,

Petitioner,

v.

ADRIAN HERNANDEZ,

Respondent.

Civ. No.: 04-10640-NMG

## PETITIONER SUZANNE BRANCIFORTE'S OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

Petitioner Suzanne Branciforte ("Ms. Branciforte" or "Suzanne") respectfully submits this opposition to the Motion to Dismiss filed by Respondent Adrian Hernandez ("Mr. Hernandez" or "Adrian"). Glaringly absent from Mr. Hernandez's motion is any authority, *in the context of a claim under the Hague Convention on the Civil Aspects of International Child Abduction* (the "Hague Convention"), to support his argument that a state court custody ruling forecloses a Hague Convention claim based on the doctrine of *res judicata*. Likewise, Mr. Hernandez identifies absolutely no authority to support the transfer of a Hague Convention claim to state court over a petitioner's objection. Perhaps most importantly, Mr. Hernandez simply ignores the abundance of authority to the contrary, including those cases cited herein and in previous submissions to this Court. In sum, this Court should not accept Mr. Hernandez's invitation to relinquish its jurisdiction, without precedent, contrary to the international and federal laws that have been triggered by the request of the Central Authority of Italy for the United States Department of State to return Max to Italy.

## Background

Suzanne has not been permitted to exercise parental rights as to Max for approximately 5 years. Max is now 10 years old. After a trial court in Italy initially issued a ruling in Adrian's favor on Hague Convention issues, the Supreme Court of Italy reversed that determination, finding that Max should not have been returned to the United States. A subsequent family court ruling in Italy echoed the same position. *See* Petition, Exh. A. Massachusetts courts have resolved custody issues in Adrian's favor, without ever reaching Hague Convention issues. In his motion to dismiss, Adrian seeks essentially to ignore the rulings out of Italy while arguing that the doctrine of *res judicata* has preclusive effect over all claims in this action because custody issues have purportedly been fully, fairly and finally litigated in a Massachusetts family court.

As described in her Amended Verified Petition ("Petition") in this matter, prior to the parties' divorce, Suzanne and Adrian agreed in a formal Stipulation that she could take Max to live with her in Italy. *See* Petition ¶¶ 7-11; *see also Branciforte v. Hernandez*, 55 Mass. App. Ct. 212, 213 (2002). A copy of the Stipulation is attached hereto as Exhibit A. Through the stipulation and otherwise, Suzanne obtained Adrian's consent to Max remaining with her in Italy upon the divorce, and the parties even agreed to a visitation schedule for Adrian in Italy for more than a year, through August 31, 1998. *See* Petition ¶¶ 8-10; *see also Branciforte*, 55 Mass. App. Ct. at 213. The divorce decree awarded physical custody to Suzanne, with the parties sharing joint legal custody. *See* Petition ¶ 10. The Stipulation did not place any express limitation on Suzanne's right to remain in Italy indefinitely with Max. *See* Exh. A. Pursuant to the Stipulation, Suzanne and Adrian agreed to negotiate further visitation for Adrian in good faith after August 1998. *See* Petition ¶ 9.

The Petition contains, among other things, the following specific allegations:

> 7. On or about August 5, 1997, the Parents entered into a written stipulation for interim orders related to their divorce, custody and visitation matters (the "Stipulation"). The stipulation began by stating that "[t]he parties shall have joint legal custody of the minor child" and that "[t]he wife shall have physical custody of the minor child."
> 8. Paragraph 3 of the Stipulation authorized Suzanne to remove Max from the United States and to take him with her to Italy, and set a schedule of time that the child would be with each parent during several subsequent months. Paragraph 4 provided certain additional rights to Suzanne regarding access to Max while he is in the United States. Paragraph 5 provided Hernandez with visitation rights from July 24, 1998 through August 31, 1998 in the United States, contemplating a return of Max to his mother in Italy at the start of September 1998. Paragraph 6 provided visitation rights for Hernandez during school breaks. Paragraph 6A provided Hernandez with rights to telephonic access twice each week while the child resided with his mother Suzanne in Italy.
> 9. The Stipulation did not place any limitation on Suzanne's right to remain in Italy indefinitely with Max. Pursuant to the Stipulation, Suzanne and Hernandez agreed to negotiate further visitation for Hernandez in good faith after August 1998.
> 10. On or about October 16, 1997, Suzanne and Hernandez entered into a formal divorce agreement that incorporated their August 5, 1997, stipulations. Although the agreement was, by its terms, to be construed under Massachusetts law, Section VI expressly empowered the parties to enforce it "in any court with jurisdiction over the person or property of the other party." The divorce decree expressly identified Suzanne as a resident of Italy.
> 11. By in or about June 1998, Max had resided primarily with his mother Suzanne in Italy for a period of more than six (6) months, attending school there on a regular and permanent basis. Suzanne had complied with the Stipulation. Hernandez had visited Max in Italy as late as in or about April 1998. Also, Hernandez had regularly placed and received telephone calls to and from Max in Italy. By in or about June 1998, Max's place of habitual residence had become Italy. Hernandez became subject to the jurisdiction of courts in Italy over custody-related matters pertaining to Max.

Petition ¶¶ 7-11.

In or about July 1998, a dispute arose regarding prospective custody rights. Adrian advanced claims for a shift of physical custody in *Hernandez v. Branciforte*, 95DR-2156-DV1 (Mass. Super. Ct., Worcester County Probate & Family Court Department) ("Worcester Probate Court") and shortly thereafter submitted claims under the Hague Convention to a family court in Italy. *See id.* Initially, the family court in Italy granted Adrian's Hague Convention claims based largely on a temporary order he had obtained in Massachusetts. *See* Petition, Exh. A (describing procedural history in Italy). Subsequently, the Supreme Court of Italy reversed that decision. *See id.* Unfortunately, in the interim, Adrian had brought Max back to the United States, contrary to the ultimate determination by the Supreme Court of Italy regarding the parties' rights under the Hague Convention. On remand, the family court in Italy dismissed Adrian's Hague Convention claims in a decision reflecting, at least implicitly, that Max's habitual residence had become Italy. *Id.* The family court in Italy specifically found that "there was no basis for the child to be returned to his father" and that the content of telephone calls with Max reflects that the separation of him from his mother "causes deep grief to the child, whose rights to maintain significant relations with his mother deserve primary consideration." Petition, Exh. A at 1-2. Adrian ignored the substance of these rulings in his motion to dismiss, and in his ongoing aggressive approach in the Worcester Probate Court, even though he had submitted to the jurisdiction of Italy for the determination of Hague Convention issues.

Rather than honor the decision of the Supreme Court of Italy and the family court there on remand, Adrian aggressively pursued contempt claims and the like against Suzanne in Massachusetts. The Massachusetts courts essentially held against Suzanne her efforts to preserve her rights in Italy and under the Hague Convention. *See Hernandez*, 55 Mass. App. Ct. at 215-17. Ultimately, the Worcester Probate Court exercised jurisdiction over Max, reasoning

4

that Suzanne never filed a formal petition for removal of the child.

No Massachusetts court has addressed Hague Convention issues in this matter. In fact, the Massachusetts courts expressly noted that they were not addressing Hague Convention issues. *Id.* at 215 n. 1. The only courts in this matter that have addressed Hague Convention issues are courts in Italy. When doing so, the Supreme Court of Italy ruled in Suzanne's favor, as did a subsequent family court decision in Italy. *See* Petition, Exh. A.

In the meantime, Adrian and his counsel have conducted nothing shy of a vendetta against Suzanne. *See* Petition ¶¶ 27-32. Threats by Adrian and his counsel of criminal penalties and the like have prevented Suzanne from comfortably securing access to Max in Massachusetts. *See id.* While Suzanne enjoyed substantial telephonic contact with Max until recently, even that has now been terminated, to the extreme detriment of both mother and son. Petition ¶¶ 1, 32.

On April 9, 2004, the United States Department of State directed a letter to the Worcester Probate Court informing it of the request by the Central Authority of Italy for the return of Max and the obligation under the Hague Convention for the Worcester Probate Court to refrain from further custody-related proceedings. *See* Petitioner's Motion for Reasonable Access, Exh. A. In this action, Suzanne seeks, under international law, to enforce her rights under the laws of Italy as reflected in the rulings of the Italian courts, to obtain the return of Max to her in Italy, to have the custody and related orders by the Massachusetts courts vacated, and to obtain reasonable access to Max in the interim.

## Argument

I. **Suzanne's Hague Convention Claims Readily Survive Any Motion To Dismiss Because This Court Must Take All Of Her Allegations As True, Draw All Reasonable Inferences In Her Favor, And Consider Only The Petition And Documents Referenced Therein.**

At the motion to dismiss stage, courts "must accept as true the factual allegations of the complaint and draw all reasonable inferences in favor of" the non-moving party. *Blackstone Realty LLC v. FDIC*, 244 F. 3d 193, 197 (1st Cir. 2001). "[F]or dismissal to be allowed on the basis of an affirmative defense, the facts establishing the defense must be clear 'on the face of the plaintiff's pleadings.'" *Id.* (citations omitted).

To place a claimant's action in context, "it is well-established that in reviewing the complaint, [courts] 'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment.'" *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (vacating dismissal after reviewing documents in the record that appeared "integral" to plaintiff's claims).

Here, Adrian's motion to dismiss ignores many material factual allegations and therefore seeks dismissal under inappropriate legal standards. Adrian's motion dwells extensively, if not overzealously, on arguments regarding the credibility of the parties and other fact issues far outside the scope of review at this stage of the proceeding. In addition, his motion ignores entirely the existence of the formal Stipulation between the parties, which provided Suzanne with the right to remain in Italy with Max upon the parties' divorce. *See* Exh. A. Under *Clorox* and similar cases, this Court should consider the content of the Stipulation itself, drawing all inferences in favor of Suzanne when interpreting the Stipulation at this stage of the proceeding. *Clorox Co.*, 228 F.3d at 32.

6

As explained more fully below, the decisions by the Massachusetts courts do not even remotely foreclose findings by this Court in Suzanne's favor on Hague Convention issues. For example, there are sufficient allegations to support a finding that Max's "habitual residence," as that term is used in the context of the Hague Convention, had changed to Italy by the time Adrian brought Max back to the United States in or about April 1999. Upon such a finding, the laws of Italy would apply to any custody determinations, and the Massachusetts decisions would therefore rest on fundamentally flawed premises.

A. **The Doctrine of *Res Judicata* Does Not Bar The Present Action Because State Court Custody Determinations Have No Preclusive Effect on Hague Convention Claims.**

Adrian cannot successfully circumvent the decision by the Supreme Court of Italy, or Suzanne's underlying Hague Convention rights, by merely continuing to litigate custody matters against Suzanne in a Massachusetts probate court. Because, as described below, the Hague Convention authorizes this Court to invalidate state court custody proceedings that contravene the Hague Convention, previous rulings of a Massachusetts probate court have no preclusive effect on the present proceeding. *See, e.g.*, Hague Convention, art. 16 ("the judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention"); *Blondin v. Dubois*, 189 F.3d 240, 245 n.2 (2nd Cir. 1999); *Holder v. Holder*, 305 F.3d 854 (9th Cir. 2002); *Mozes v. Mozes*, 239 F.3d 1067 (9th Cir. 2001).

This Court possesses the authority and the obligation to invalidate state court rulings in prior custody proceedings that contravened the Hague Convention. As the *Holder* court has explained:

7

> It would also undermine the very scheme created by the Hague Convention and ICARA to hold that a Hague Convention claim is barred by a state court *custody* determination, simply because a petitioner did not raise his *Hague Convention* claim in the initial custody proceeding. The Hague Convention provides that children are not automatically removed from its protections by virtue of a judicial decision awarding custody to the alleged abductor. *E.g.*, Hague Convention, art. 17, 19 L.L.N. at 1503. Indeed, the typical Hague Convention case involves at least the potential for two competing custody orders, one in the children's "habitual residence," and one in the country to which the children have been taken. To hold that a left-behind parent is barred, in such a case, from raising a Hague Convention claim in a subsequent federal proceeding just because he or she did not raise it in the state custody proceeding would render the Convention an incompetent remedy for the very problem that it was ratified to address.
>
> Such a holding would also contravene our holding in *Mozes*. In *Mozes* we held that the *Rooker-Feldman* doctrine would not bar a federal district court adjudicating a Hague Convention proceeding from vacating a state court's custody order or its order enjoining removal of the child from its jurisdiction: "Congress has expressly granted the federal courts jurisdiction to vindicate rights arising under the Convention. ***Thus, federal courts must have the power to vacate state custody determinations and other state court orders that contravene the treaty.***" 239 F.3d at 1085 n. 55 (citation omitted). It clearly follows that, if a prior state court custody order cannot bar a federal court from vacating the state court order, then it cannot bar federal adjudication of the Hague Convention claim.

*Holder*, 305 F.3d at 865 (emphasis added).

Accordingly, this Court is in no way bound by any decisions of the Worcester Probate Court. As Suzanne will demonstrate in a motion on the merits or at an evidentiary hearing, the Worcester Probate Court decisions have improperly disregarded Italy's interest in this matter; erroneously supplanted international standards governing the determination of "habitual residence" with an irrelevant standard under Massachusetts law governing "petitions for removal" of children from the Commonwealth; and, effectively penalized Suzanne for her persistent efforts to preserve her rights under the Hague Convention and the laws of Italy. Even

outside of the Hague Convention context, by their very nature, custody matters remain continuously reviewable for what serves the best interests of the child, thereby hardly entitling custody awards the same degree of finality as other civil judgments to which the doctrine of *res judicata* actually applies. Adrian cannot even argue that Massachusetts law forecloses further custody determinations, so instead he argues that Suzanne simply "knows that she will never convince the state court that she is entitled to custody" (*see* Respondent's Opposition to Petitioner's Motion for Reasonable access at 4). His position reflects exactly the sort of home-court advantage that the Hague Convention seeks to eliminate by providing a reliable mechanism by which foreigners can fairly enforce their parental rights under foreign and international law.

For the same reasons, this action cannot be dismissed, stayed or transferred under the rubric of *forum non conveniens*, abstention, or the like. This Court is the appropriate forum for the litigation of important Hague Convention issues in dispute between the parties. The International Child Abductions Remedies Act ("ICARA"), which implements the Hague Convention, authorizes a petitioner to file her action in federal court in the district in which "the child is located at the time the petition is filed." 42 U.S.C. § 11603(b). There is no dispute that the District of Massachusetts is the district in which Max was and remains located since the filing of the Petition in this matter. Hence, under the Hague Convention and ICARA, this Court provides the appropriate forum for this litigation.

Recognizing that Hague Convention issues must be resolved promptly and before the effective resolution of custody matters, federal courts have consistently found it inappropriate to abstain in favor of state court proceedings when a Hague Convention petitioner has insisted on a federal forum for his or her claims under international law. *See, e.g., Hazbun Escaf v. Rodriguez*, 191 F. Supp. 2d 685, 693 & fn. 31-34 (E.D. Va. 2002) (relying on Second Circuit and Eighth

Circuit cases finding abstention inappropriate in Hague Convention actions because "[d]eference to a state court's interest in a custody dispute is especially problematic in the context of a Hague Convention claim because ICARA and the Convention explicitly 'divest [ ] the state of jurisdiction over ... custody issues until the merits of the Hague Convention claim have been resolved.'"), *aff'd*, 52 Fed. Appx. 207 (4th Cir. 2002).

The United States Department of State has directed a letter to the Worcester Probate Court informing it that the Central Authority of Italy has submitted an application under the Hague Convention for the return of Max to Italy. *See* Petitioner's Motion for Reasonable Access, Exh. A. The letter expressly refers to Article 16, which requires the resolution of issues under the Hague Convention before any further custody-related proceedings. Nevertheless, upon information and belief, Adrian's counsel is attempting to schedule, or has scheduled, hearings in the Worcester Probate Court.

Adrian's motion has furnished this Court with absolutely no authority for relinquishing its jurisdiction and international obligations under the Hague Convention. This Court should not accept Adrian's novel invitation to reject at the pleading stage the request by the Central Authority of Italy for the return of Max, the decision by the Supreme Court of Italy, and the subsequent ruling by the family court in Italy (see Petition, Exh. A), based solely on Massachusetts state court rulings that expressly never reached Hague Convention issues. *See Hernandez*, 55 Mass. App. Ct. at 215 n. 1. Just as explained in *Holder, supra*, state court custody rulings cannot be honored blindly here because there exist unresolved core Hague Convention issues, such as whether the habitual residence of Max changed to Italy under *international* law (regardless of what a Massachusetts court may believe Massachusetts law may require procedurally of parents who agree in a formal stipulation to the relocation of a child to

another country) before his father removed him from Italy to the United States in or about April 1999. Until that issue is litigated and resolved, state court custody rulings cannot have a proper foundation and should not be afforded blind deference.

Accordingly, Adrian's *res judicata* argument must be rejected. State court custody-type decisions simply do not foreclose the adjudication of Hague Convention claims in federal court. In fact, if any decision should be scrupulously honored with regard to the merits of Suzanne's Hague Convention claims, it is the decision in her favor by the Supreme Court of Italy.

> B.  **There Are Sufficient Allegations To Support A Finding That Max's Habitual Residence Became Italy Before His Father Returned Him To The United States.**

The "habitual residence" of a child under the Hague Convention entails a fact-sensitive analysis and determination, not generally susceptible to resolution on pleadings that contain allegations of material facts that appear at least somewhat in dispute. *See Zuker v. Andrews*, 2 F. Supp.2d 134, 136-38 (D. Mass. 1998) (collecting Hague Convention cases reflecting that even a few months in a new location can result in change of "habitual residence"), *aff'd*, 181 F.3d 81 (1st Cir. 1999). As alleged, by about June 1998, Max had resided primarily with his mother Suzanne in Italy for a period of more than six (6) months, and attended school there on a regular and permanent basis. Petition ¶ 11. Suzanne had complied with the Stipulation, and Hernandez had visited Max in Italy as late as in or about April 1998. *Id.* Also, pursuant to the Stipulation, Hernandez had regularly placed and received telephone calls to and from Max in Italy. *Id.* As a result of these and other circumstances, as alleged, "by in or about June 1998, Max's place of habitual residence had become Italy." *Id.*

Taken as true, which they must be at this stage of the litigation, these allegations provide a much more than adequate basis for Suzanne's claim that Max should be considered to have

been a habitual resident of Italy from at least in or about June 1998 through his removal to the United States in April 1999. The *Zuker* decision illuminates the appropriate Hague Convention analysis that flows from a determination of habitual residence. If this Court determines that Max's habitual residence was Italy by the time his father returned him to the United States, then the custody laws of Italy should be applied to determine whether Max has been wrongfully retained in the United States. *See Zuker*, 2 F. Supp. 2d at 136-38. If retaining Max in the United States violated the laws of Italy (which it has as revealed in subsequent decisions of courts in Italy, *see* Petition, Exh. A), then the retention of him here is "wrongful," within the meaning of the Hague Convention, and he must be returned promptly to Italy for custody determinations there. *See id.*

While the Worcester Probate Court may have found dispositive on custody issues the lack of a so-called "Petition for Removal," the laws of Italy and international law regarding "habitual residence" can hardly be overwritten in a dispositive manner by the view of a Massachusetts state court on a procedural device available in Massachusetts. Rather, this Court should ultimately honor the laws of Italy and international law, under the Hague Convention, that place significantly more value on the parties' express agreement in a formal Stipulation, their actual conduct with regard to Max's place of residence at the relevant time, the length of time Max lived in Italy with his mother, his educational and extracurricular pursuits in Italy, and other circumstances that clarified the ways in which Italy had become his settled home before his father returned him to the United States in or about April 1999. The Hague Convention requires nothing less.

Because there appears in the Petition a factual basis for this Court reaching the conclusion that Max's habitual residence had become Italy before his father removed him to the

United States, then the laws of Italy could (and will) be deemed applicable to the remaining issues under the Hague Convention, such as whether the father's retention of Max in the United States has been "wrongful" under the laws of the country of habitual residence. While such issues are beyond the scope of the present motion, facts supporting Suzanne's position and each element of her Hague Convention claim are adequately set forth in the Petition. Under the Hague Convention and ICARA, she is entitled to a prompt evidentiary hearing in this Court to prove the facts establishing her claims and, specifically, her rights under the laws of Italy and international law to the return of Max to Italy.

C. **Under The Hague Convention, Suzanne Is Entitled To Immediate Reasonable Access To Max, Along With Judicial Immunity From Process To Protect Against Adverse Consequences Of Her Visitations With Max.**

Adrian's motion ignores entirely that beyond custody rights, access (visitation-type) rights, on both an interim and permanent basis, are also at issue in this proceeding and hardly foreclosed by any state court decision. Article 1 of the Hague Convention provides that the objectives of the Hague Convention include not only ensuring the return of children to a former place of habitual residence, but also honoring that rights "of access under the law of one Contracting State are effectively respected in the other Contracting States." ICARA implements the Hague Convention and provides this Court with jurisdiction to grant provisional remedies during the pendency of this proceeding in the interests of the "well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." 42 U.S.C. § 11604(b).

Petitioner's parental rights to Max, within the meaning of the Hague Convention, are reflected in the decisions of courts in Italy and the request by the Central Authority of Italy for the return of Max. *See* Petition, Exh. A; Petitioner's Motion for Reasonable Access, Exh. A.

The family court in Italy found that "there was no basis for the child to be returned to his father" and that the content of telephone calls with Max reflects that the separation of him from his mother "causes deep grief to the child, whose rights to maintain significant relations with his mother deserve primary consideration." Petition, Exh. A at 1-2. Under such circumstances, Petitioner's rights of access should be enforced in this proceeding by granting her immediate reasonable access by telephone and in person.

Even in the event that this Court somehow ultimately reaches a different conclusion than did the Supreme Court of Italy and the subsequent family court decision in Italy finding that Max should not have been returned to the United States, Suzanne remains entitled to enforcement of her rights of access under the Hague Convention. The Second Circuit explained, in *Croll v. Croll*, 229 F.3d 133, 143-44 (2d Cir. 2000), that foreign court orders that reflect parental rights shy of custody, without more, still trigger the provision under the Hague Convention that "affords [left-behind parents] several remedies for trespass on those rights" of access, even if a return of the child to the foreign country ultimately appears unauthorized. *Id.* at 143-44. Reasonable communication and visitation are the epitome of such access rights. Because there has been a ruling under the Hague Convention by the Supreme Court of Italy and family court in Italy in Suzanne's favor, her right to at least immediate and reasonable access to her son Max appears indisputable. (At an evidentiary hearing in this matter, Suzanne intends to prove that her parental rights exceed those held by the parent in *Croll* and actually require the return of Max to Italy.)

II.  **The Doctrine Of *Forum Non Convniens* Has No Application In The Present Matter.**

Adrian attempts improperly to invoke the doctrine of *forum non conveniens* for a dismissal of this matter in favor of a state court proceeding. While cases *removed* to federal

court may be remanded, and federal cases may be transferred among federal districts, there is simply no basis for an effective *transfer* of this matter to state court. This matter was not *removed* to this Court, but rather originally filed in federal court. Nothing in Adrian's motion to dismiss suggests that he seeks a different *federal* district. To the extent that he is, in reality, seeking a form of *abstention*, he has failed to address that argument directly. As discussed in Point I, *supra*, such abstention or the like is simply unavailable in Hague Convention cases. To the extent he is truly attempting to invoke the doctrine of *forum non conveniens*, he fails to justify a dismissal. In fact, his arguments provide more of a basis for this Court to defer to the courts of Italy on the issue of whether Max's habitual residence had become Italy by the time his father removed him from there in or about April 1999.

"The doctrine of *forum non conveniens* permits a trial court, on a discretionary basis, to dismiss a case where an alternative forum is available *in another country* that is fair to the parties and substantially more convenient for them or the courts." *Nowak v. Tak How Investnments, LTD*, 94 F.3d 708, 719 (1st Cir. 1996) (emphasis added). The First Circuit has "emphasized that the doctrine of *forum non conveniens* is used to avoid 'serious unfairness' and that plaintiff's choice of a forum will be disturbed only rarely." *Id.* There is a strong "presumption" in favor of a plaintiff's choice of forum. *Id.* In Hague Convention matters, this choice is even more important than in many other settings. *See, supra*, Point I.A.

Adrian has clearly fallen far shy of the burden he bears in support of a motion based on the doctrine of *forum non conveniens*. His citation to *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8 (1st Cir. 2000), actually undercuts his position because that decision placed a *high* burden on a movant to demonstrate "that the compendium of factors relevant to the private and public interests implicated by the case *strongly* favors dismissal" in favor of a *foreign* forum. *Id.* at 12

15

(emphasis added). Adrian has failed to cite any authority that presents a setting even remotely close to that in the present case. He has similarly failed to demonstrate that the state court would even provide an actual forum for the full adjudication of Hague Convention claims, and has also failed to demonstrate that efficiency and policy concerns strongly favor his choice of forum. Nothing in the record overcomes the strong presumption in favor of Suzanne's choice of forum.

In reality, a balancing of the relevant factors clearly favors this forum, while Adrian falls far shy of meeting the high burden to justify a dismissal. It is undisputed that Max and Adrian now reside in the Boston area. In fact, except for the proceeding in Worcester itself, nothing in the record reflects any present connection between the parties in this matter and Worcester. Adrian admits in his motion that "Worcester is an additional 45 minutes west of Boston," which would create an added expense and inconvenience for parties, witnesses and counsel, all of whom are or would be present in the Boston area for the adjudication of Hague Convention claims. Adrian does not deny in his papers that this Court certainly possesses an equal or greater capacity than that of the state court to issue compulsory process and to enforce a judgment in this action. While Adrian attempts to argue that the probate court's familiarity with the matter (through extensive hearings conducted while Suzanne resided in Italy), such "familiarity" actually reflects the threat that the Hague Convention seeks to protect for foreign petitioners. In so arguing, Adrian also ignores that this Court faces only relatively narrow Hague Convention issues which have not been previously decided by the state court, and which focus primarily on whether the habitual residence of Max had become Italy before his removal from there in or about April 1999. Adrian fails to identify any experience that the particular state court has in Hague Convention matters, or whether that court would even entertain such claims in the present matter.

Even more importantly, there is a significant public interest in this Court exercising its jurisdiction over Hague Convention claims. The Central Authority of Italy has requested the return of Max and immediate access between Suzanne and Max, thereby triggering rights and obligations internationally under the Hague Convention. International cooperation in such matters is critical to the success of the Hague Convention. A decision by this Court simply to relinquish its obligation to exercise jurisdiction would undermine efforts by left-behind parents in the United States to obtain assistance from foreign countries where their children now reside. Federal courts have repeatedly and unanimously recognized the importance of Hague Convention claims, the right of foreign parents to seek relief under the Hague Convention in *federal* court, and the need to cooperate in such matters to encourage reciprocity.

Accordingly, the record simply does not support the dismissal of this action based on the doctrine of *forum non conveniens*. Adrian has fallen far shy of his burden.

### Conclusion

Based on the foregoing, Respondent's motion to dismiss does not support a dismissal of Suzanne's claims. His motion to dismiss should be denied in its entirety.

Respectfully submitted,

By: _____
Barry S. Pollack (BBO#642064)
DONNELLY, CONROY & GELHAAR, LLP
One Beacon Street
Boston, MA 02108
(617) 720-2880
Attorneys for Petitioner Suzanne Branciforte

Dated: August 2, 2004

**CERTIFICATE OF SERVICE**
I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand

Date: 8/2/04  _____